**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| CHERYL WATKINS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|       v. | ) | CAUSE NO.: 4:26-CV-16-GSL-JEM |
| | ) | |
| CVS, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings [DE 16], filed February 4, 2026. Defendant Hook-SupeRx, LLC, sued as "CVS," requests that this matter be stayed and Plaintiff be compelled to submit all her claims to binding arbitration as administered by the American Arbitration Association pursuant to the written arbitration agreement between the parties. Plaintiff, who is proceeding without counsel, filed a letter indicating her objection to the motion, received by the Corut on March 18, 2026. Defendant has not filed a reply and the time to do so has passed.

## I.    Analysis

Plaintiff brings claims for age and disability discrimination and race against her former employer. Defendant asserts that as part of the job application process, Plaintiff signed an arbitration agreement waiving the right to pursue employment-related claims in court and agreeing to submit disputes to arbitration. In the instant motion, Defendant requests that the Court compel arbitration of Plaintiff's claims against Defendant and stay this case pending arbitration. In response, Plaintiff represents that she did not know about the arbitration agreement, does not think

1

that arbitration is in her best interest, and does not believe that arbitration is fair in civil rights cases.

The Court notes that the question of whether to compel an appraisal is not dispositive because it does not dispose of the case and is therefore properly handled by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 without issuing a report and recommendation. *Kesic v. Am. Fam. Mut. Ins. Co.*, No. 2:15-CV-411, 2016 WL 10770865, at *2-3 (N.D. Ind. June 24, 2016) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010); *V.I. Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed. Appx. 131, 133–34 (3d Cir. 2014); *Chatman v. Pizza Hut, Inc.*, 2013 WL 2285804, at *2 (N.D. Ill. May 23, 2013)).

A. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, was enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)) (internal quotation marks omitted). "The Supreme Court has repeatedly counseled that the FAA leaves no room for judicial hostility to arbitration proceedings and that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased." *Penn v. Ryan's Family Steak House, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001) (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th

2

Cir. 1993) (reversing denial of motion to compel arbitration and explaining that "[i]t is beyond peradventure that the [FAA] embodies a strong federal policy in favor of arbitration").

In determining whether arbitration should be compelled, "the first task . . . is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353, 87 L. Ed. 2d 444 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983). "[A]ny doubt about the scope of arbitrable issues should be resolved in favor of arbitration." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 445 (2003) (quoting *Mitsubishi Motors*, 473 U.S. at 626) (quotation marks omitted).

B.  Parties' Agreement

"Whether a binding arbitration agreement exists is determined under principles of state contract law." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 734 (7th Cir. 2002) (citing 9 U.S.C. § 2; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). A contract under Indiana law is formed when there is "[a]n offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract." *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005) (quoting *Rodziewicz v. Waffco Heavy Duty Towing*, 763 N.E.2d 491, 493 (Ind. Ct. App. 2002)).

Defendant attaches the CVS Health Arbitration Agreement. In the first section, titled "Mutual Agreement to Arbitrate Claims," it provides:

> Under this Agreement, You and CVS agree that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.

3

Ex. A ¶ 1 [DE 17-1]. The next section identified claims covered by the agreement and explains:

> Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies that CVS may have, now or in the future, against You or that You may have, now or in the future, against CVS or one of its employees or agents, arising out of or related to Your employment with CVS or the termination of Your employment.

*Id*. ¶ 2. It then goes on to identify a number of types of claims that are explicitly covered by the agreement, including claims for "harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment," and to specify that "Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement." *Id*.

The Agreement also explains that "Arbitration is not a mandatory condition of Your employment at CVS" and provides for a method of opting out of arbitration by mailing "a written, signed and dated letter stating clearly that You wish to opt out of this Agreement" to CVS within 30 days of the date of signing the agreement. *Id.* ¶ 7.

C.  Existence of Contract

The Court finds that a contract to arbitrate was formed between the parties. Defendant made an offer to enter into the agreement when it presented the arbitration agreement to Plaintiff as part of the hiring process. She was given the opportunity to review it, and the document explained the method of opting out, with no consequence to her employment. Plaintiff signed the document electronically via checking the acknowledgment box while logged in to the employer's application via a unique username and password, Ind. Code § 26-2-8-102(8) ("'Electronic signature' means an electronic sound, symbol, or process attached to or logically associated with

4

an electronic record and executed or adopted by a person with the intent to sign the electronic record."); *Borjas v. State*, 946 N.E.2d 1230, 1232 (Ind. Ct. App. 2011) ("Under Indiana law, electronic signatures have the same force and effect as written signatures."), and began working for Defendant. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713 (7th Cir. 2019) (finding failure to comply with opt-out provision and continuing to work indicated acceptance of employer's arbitration agreement). Her employment and the exchange of mutual promise to arbitrate constitute sufficient consideration to find that a contract was formed. *Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E.2d 766, 770 (Ind. Ct. App. 2010) ("A promise is also valuable consideration, and an exchange of mutual promises is consideration."); *see also Dirth v. Oak St. Health, Inc.,* No. 24 C 5290, 2025 WL 524142, at *4 (N.D. Ill. Feb. 18, 2025) (finding that although "the 'mere fact of continued employment does not constitute consideration' in the absence of a 'specific promise,'" the promise of "'continued employment'" with "a reciprocal promise by [the employer] to arbitrate in exchange for her agreement to arbitrate . . . [is] adequate consideration") (quoting *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1132 (7th Cir. 1997)).

A binding arbitration agreement exists between these parties. The agreement explicitly identifies claims like those alleged in the Complaint as covered by the agreement. In her response, Plaintiff asserts that civil rights claims are inappropriate for arbitration. However, the presumption of arbitrability requires the Court to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)

5

(analyzing an arbitration clause within a collective bargaining agreement)); *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). In this case, in addition to specifically including claims of race, age, and disability discrimination such as those brought by Plaintiff in this case, the arbitration agreement provides that "Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement." Ex. A ¶ 2 [DE 17-1]. "[A]ny dispute between contracting parties that is in any way connected with their contract could be said to 'arise out of' their agreement and thus be subject to arbitration under a provision employing this language." *Sweet Dreams*, 1 F.3d at 642. In addition, "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted). The parties have done so in this case.

Plaintiff's claims must be submitted to arbitration pursuant to the parties' valid arbitration agreement. 9 U.S.C. § 4. Regarding a stay of litigation pending arbitration, 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had.

9 U.S.C. § 3. Accordingly, these proceedings must be stayed and arbitration compelled. *Harter v. Iowa Grain Co.*, 220 F.3d 544, 549 (7th Cir. 2000) (citing 9 U.S.C. § 3) ("a court must stay its proceedings and compel arbitration if it is satisfied that an issue before it is arbitrable under the parties' agreement").

**II.    Conclusion**

Accordingly, the Court:

(1)  **GRANTS** Defendant's Motion to Compel Arbitration and Stay Proceedings [DE 16]

(2)   **COMPELS** the parties to submit all claims to binding arbitration as administered by the American Arbitration Association;

(3)  **ORDERS** that this matter is **STAYED** pending the outcome of arbitration;

(4)  **DIRECTS** the Clerk of Court to **MARK** this action **CLOSED** for statistical purposes;

(5)  **VACATES** the status hearing currently set for April 30, 2026, and any other pending hearings and deadlines.

The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

SO ORDERED this 30th day of March, 2026.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Plaintiff, *pro se*